1  THOMAS J. NOLAN (SBN 66992)
2  thomas.nolan@skadden.com
   ERIC S. WAXMAN (SBN 106649)
3  eric.waxman@skadden.com
4  SKADDEN, ARPS, SLATE,
      MEAGHER & FLOM LLP
5  300 South Grand Avenue
6  Los Angeles, California 90071-3144
   Telephone:   (213) 687-5000
7  Facsimile:    (213) 687-5600

8
   Attorneys for Defendants
9  TCW ASSET MANAGEMENT
10 COMPANY, THE TCW GROUP,
   INC., AND TRUST COMPANY OF
11 THE WEST

12
                 **UNITED STATES DISTRICT COURT**
13
14               **CENTRAL DISTRICT OF CALIFORNIA**

15 EIG GLOBAL ENERGY PARTNERS,         CASE NO.: **CV12-07173 CAS (MANx)**
16 LLC, a Delaware limited liability
   company,                            **DEFENDANTS' OBJECTIONS TO**
17                                      **PLAINTIFF'S [PROPOSED]**
                                        **PRELIMINARY INJUNCTION**
18                  Plaintiff,          **ORDER**

19         v.
                                        Hearing Date:    November 5, 2012
20 TCW ASSET MANAGEMENT                 Time:               10:00 a.m.
21 COMPANY, a California corporation,   Courtroom:        5
   THE TCW GROUP, INC., a Nevada       Judge:       Hon. Christina A. Snyder
22 corporation, and TRUST COMPANY      Complaint Filed: August 21, 2012
   OF THE WEST, a California
23 corporation,

24
                  Defendants.
25

26

27

28

Pending EIG's submission of a new proposed order, defendants The TCW Group, Inc. ("TCW"), TCW Asset Management Company ("TAMCO") and Trust Company of the West "TCXW") (collectively, "TCW" or "Defendants") hereby submit the following objections to Plaintiff's [Proposed] Preliminary Injunction Order ("EIG's Proposed Order"), which EIG previously lodged along with its motion. (ECF No. 5-1.)  In the event EIG submits a new proposed order, TCW reserves its rights to object to that order.   And, if the Court determines to grant preliminary injunctive relief, TCW respectfully requests an opportunity to submit its own proposed form of order and to be heard on the appropriate scope of any injunction and the bond appropriate to that injunction.

## I.   INJUNCTION ORIGINALLY PROPOSED BY EIG

"Defendants, and all of their parents, subsidiaries, officers, agents, servants, employees, and attorneys, and all persons in active concert or participation or in privity with any of them who receive actual notice of the order by personal service or otherwise, ARE HEREBY PRELIMINARILY RESTRAINED AND ENJOINED from taking any steps to consummate any transaction resulting in a change in control of TAMCO (including but not limited to the pending Carlyle Group acquisition of a majority of TCW Group stock).  The conduct prohibited includes, but is not limited to, (a) participating in a transaction closing or taking any steps whose immediate effect would be to consummate or close the transaction; (b) recording a change in ownership of stock or a TCW Entity on any books or records with respect to such a transaction; (c) seeking or obtaining consents of any kind to effectuate the transaction, other than consent of the Board of Directors of 'TCW-EIG Alternative Investments, LLC' established through the Limited Liability Company Agreement dated as of October 16, 2009 (the 'EIG-TCW JV'); (d) providing any notices or acknowledgements of any purported or prospective transfer of any TAMCO membership or economic interests in EIG–TCW JV with respect to such transaction,

1

1  (e) sharing confidential EIG-TCW JV information with Carlyle Group (or other

2  proposed acquirers), or (f) appointing as officers, directors, employees, or

3  representatives of the TCW Entities, or any of them, any personnel employed by

4  Carlyle Group (or other acquirer)."  (ECF No. 5-1, ¶ 2 at 1:5-24.)

5       "Within fourteen days of the date the Court enters this Preliminary Injunction,

6  Defendants shall file and serve a report in writing and under oath setting forth in

7  detail the manner and form with which Defendants have complied, and will continue

8  to comply, with the Preliminary Injunction."

9  **II.   SPECIFIC OBJECTIONS AS TO FORM OF EIG'S PROPOSED**

10      **INJUNCTION**

11      EIG's Proposed Order is impermissibly overbroad and is not appropriately

12  tailored to address the purported harm alleged in its motion, namely, the alleged

13  transfer by TAMCO of its Membership Interest in the LLC without the consent of

14  the Board of the LLC.  See Califano, 442 U.S. at 702-03; Stormans, 586 F.3d at 1142;

15  Ocean Spray Cranberries, Inc. v. PepsiCo, Inc., 160 F.3d 58, 63-64 (1st Cir. 1998).

16  The order would do far more than prevent TCW from consummating this transfer; it

17  would prevent the consummation of the Carlyle Transaction even if it could be

18  structured to avoid any transfer of TAMCO's Membership Interest.

19      In Paragraph 2 of the Proposed Preliminary Injunction Order, EIG requests

20  that the Court enjoin Defendants as well as non-parties to the litigation from "taking

21  any steps" to "consummate any transaction resulting in a change in control of

22  TAMCO **(including but not limited to the pending Carlyle Group acquisition of**

23  **a majority of TCW Group Stock.) (emphasis added)**  As shown above, that relief

24  is overly broad because it is possible to fashion a much narrower injunction that

25  effectively would prevent TAMCO from transferring its Membership Interest to

26  Carlyle even after the Carlyle Transaction closes.  See Roche, 646 F.3d at 425-26;

27  Eurika, 899 A.2d at 115-16.  EIG's proposed order, also by its terms, applies to

28  nonparties, which is inappropriate.

2

As to subparts (a)-(d), the proposed order is entirely outside the scope of the relief necessary to preserve the status quo during the pendency of the arbitration. Further, taking steps towards the closing of the Carlyle Transaction causes no harm to EIG, while the inability to take such steps would cause great harm to TCW and the parties to the Carlyle Transaction. The parties have been, and will need to continue to, work towards an orderly closing of the transaction. These efforts involve the work of a significant number of employees and advisors of TCW and Carlyle, as well as an equally significant number of third parties, including clients. If the parties were prevented from continuing to take the necessary steps to be ready to close the Carlyle Transaction in a timely manner (subject to the terms of the injunction), it is likely that the transaction would terminate due to inability of the parties to take the necessary steps to ensure the financing sources are ready and able to fund the transaction (and the resulting expiration of the necessary financing commitments) and the inability of the parties to communicate with third parties (including TCW clients).

For example, consents from hundreds of TCW clients are being sought in connection with the transaction, including the consent of the shareholders of the TCW and MetWest mutual funds via a public proxy process, a very time-consuming process that requires the continuous efforts of all parties and their advisors. Any disruption to this process, or any other pre-closing efforts, would have a chilling effect on the ability of the parties to close the Carlyle Transaction. This will be the case even if TCW is successful in the arbitration in light of EIG's own admission that it expects the arbitration to continue well into mid-2013. Indeed, the sole irreparable injury identified by the Court in its tentative, the transfer of TAMCO's Membership Interest in the LLC without the consent of the LLC board, is fully addressed by an order that is limited to prohibiting that transfer. Nothing else is necessary or appropriate to preserve the status quo. Steps leading to that ultimate

3

1    transfer cause no irreparable injury to EIG and their inclusion in EIG's proposed

2    order violates the Supreme Court's admonition.

3          As to (e) and (f), the Court rejected claims based on the mere fear of future

4    leaks of EIG's confidential information and future interference with EIG's business

5    decisions.  Since no Carlyle designees can be appointed to the boards of the TCW

6    entities until the "transfer" occurs, an injunction limited to such a transfer is more

7    than sufficient.  (ECF No. 5-1, ¶ 2 at 1:9-11.)

8          Finally, Paragraph 5 of EIG's Proposed Preliminary Injunction Order is

9    equally overbroad and is also overly burdensome, redundant and premised on

10   an improper assumption that Defendants will disregard any preliminary injunction

11   order this Court may enter.  In essence, EIG asks the Court to order Defendants to

12   comply with any injunction entered by the Court and to swear to their compliance in

13   a report detailing the manner in which they have complied.  This is absurd.  EIG has

14   made no showing, and there is no basis to believe, that Defendants would disregard a

15   preliminary injunction order issued by the Court.

16         As courts have repeatedly recognized, it is presumed that litigants will comply

17   with – not violate – the orders of the Court.  See Kaisa v. Chang, 396 F. Supp. 375,

18   378 (D. Haw. 1975) (declining to require notice to absent class members of its order

19   for injunctive and declaratory relief because "there is no reason to assume that

20   defendants will not comply with the court's order"); Human Res. Research & Mgmt.

21   Grp., Inc. v. Cnty. of Suffolk, 687 F. Supp. 2d 237, 268 (E.D.N.Y. 2010) (where

22   court granted summary judgment enjoining enforcement of certain challenged

23   statutory provisions, declining to order any further injunction because "'the Court

24   allows the defendant a good faith presumption of compliance with the spirit and

25   letter' of the Court's ruling" (quoting Ladd v. Thomas, 14 F. Supp. 2d 222, 224-25

26   (D. Conn. 1998).

27

28

## III.   LEGAL ANALYSIS IN SUPPORT OF GENERAL AND SPECIFIC OBJECTIONS TO FORM OF ORDER

Injunctive relief must be narrowly tailored to remedy the specific harm alleged. Califano v. Yamasaki, 442 U.S. 682, 702, 99 S. Ct. 2545, 2558 (1979) (instructing that "injunctive relief should be no more burdensome to the defendants than necessary to provide complete relief to plaintiffs"); Stormans, Inc. v. Selecky, 586 F.3d 1109, 1142 (9th Cir. 2009) (reversing the district court's order of preliminary injunction as overbroad); United States Cellular Investment Company of Los Angeles, Inc. v. GTE Mobilnet, Inc., 281 F.3d 929, 939-40 (9th Cir. 2002) (upholding Judge Tevrizian's order denying preliminary injunction on indirect transfer of interest by parent of general partner as not violating restriction in partnership agreement prohibiting transfers of partnership interests without the consent of the other partners).

EIG's Proposed Order goes far beyond what would be needed to adequately preserve the status quo pending issuance of a final award in the arbitration by needlessly enjoining a transaction with a value of almost $1 billion.  For example, EIG's Proposed Order not only would enjoin the transfer of TAMCO's Membership Interest in the general partner (the "LLC") of Fund XV, a fund with approximately $4 billion of assets under management, it also would enjoin the Carlyle Transaction, a transaction with a value of value of hundreds of millions of dollars involving a global asset management firm with over $125 billion in assets under management. Consequently, as drafted, EIG's Proposed Order would preclude the transfer of ownership of a separate stand-alone investment management business with assets under management *25 times* the size of assets under management in Fund XV. EIG's Proposed Order would prevent consummation of this transaction regardless of whether it is structured to avoid a transfer of TAMCO's Membership Interest in the general partner of Fund XV.

1        EIG's Proposed Order also would preclude TCW or its parent, Société

2  Générale, from "taking any steps," including the solicitation of client consents, that

3  would enable Société Générale to close the sale of its interest in TCW in the event

4  EIG loses the arbitration.  This impact would be particularly draconian because by

5  foreclosing TCW and Société Générale from taking even preparatory steps, the

6  injunction could be the death knell of the transaction in that, for example, by the time

7  the arbitration is finally resolved, the parties to the transaction would lack sufficient

8  time to satisfy all of the conditions precedent for closing before the applicable

9  deadlines for doing so have expired and would be unable to maintain the committed

10  financing now in place.

11        In this way, the vast scope of EIG's Proposed Order is inconsistent with the

12  Supreme Court's mandate that injunctive relief be narrowly tailored.  The order also

13  goes well beyond the view expressed by the Court at the hearing that any injunction,

14  if warranted, should do no more than preserve the status quo during the pendency of

15  the arbitration.  Here, the only irreparable harm identified at oral argument was the

16  transfer of TAMCO's Membership Interest in the LLC without EIG's consent.  It is

17  entirely unnecessary, however, to enjoin the Carlyle Transaction, much less

18  preparatory steps toward closing the transaction, in order to temporarily enjoin the

19  transfer of TAMCO's Membership Interest in the LLC.  Indeed, the Court could, for

20  example, fashion adequate relief that prevents any actual transfer of the interest by

21  TAMCO by precluding TAMCO from transferring to Carlyle the benefits it enjoys

22  as the holder of its interest - - *e.g.*, the information, voting and economic rights

23  appurtenant to the interest - - pending final resolution of the arbitration, the only fund

24  covered by the LLC Agreement.

25        TCW respectfully submits that any interim injunctive relief ordered by the

26  Court should be narrowly tailored to the alleged transfer of a Membership Interest

27  without EIG's consent.  Such relief would be adequate to preserve the arbitrator's

28

DEFENDANTS' OBJECTIONS TO PLAINTIFF'S [PROPOSED] PRELIMINARY INJUNCTION ORDER      Case No. CV12-07173

ability to award EIG an effective remedy should he find a violation of the transfer provision in Section 5.1 of the LLC Agreement.  See, e.g., Roche Diagnostics Corp. v. Med. Automation Sys., 646 F.3d 424, 425-26 (7th Cir. 2011) (allowing transaction to proceed pending arbitrator's ruling on Right of First Refusal stating, "[w]e conclude that the sale can proceed if MAS and Alerc respect Roche's exclusive rights, and if the parties ensure MAS is maintained as a separate firm . . . "); Eureka VIII LLC v. Niagara Falls Holding LLC, 899 A.2d 95, 115-116 (Del. Ch. 2006) ("after finding material breaches in transfer restrictions contained in LLC agreement, Vice Chancellor Strine allows breaching partner to retain its economic rights with respect to profits and distributions but as passive member with no management rights").

Dated: November 7, 2012          SKADDEN, ARPS, SLATE, MEAGHER & FLOM LLP

                                        By:  /s/ *Eric S. Waxman*

                                          Eric S. Waxman
                                    Attorneys for Defendants
                              TCW ASSET MANAGEMENT
                          COMPANY, THE TCW GROUP, INC.,
                     AND TRUST COMPANY OF THE WEST

Of Counsel:
Seth M. Schwartz
Skadden, Arps, Slate, Meagher & Flom LLP
4 Times Square
New York, New York  10036

7