UNITED STATES DISTRICT COURT                    "O"
CENTRAL DISTRICT OF CALIFORNIA

## CIVIL MINUTES - GENERAL

| Case No. | CV 12-7173 CAS (MANx) | Date | November 30, 2012 |
|---|---|---|---|
| Title | EIG GLOBAL ENERGY PARTNERS, LLC V. TCW ASSET MANAGEMENT COMPANY, ET AL | | |

| Present: The Honorable | CHRISTINA A. SNYDER | |
|---|---|---|
| CATHERINE JEANG | Mary Rickey | N/A |
| Deputy Clerk | Court Reporter / Recorder | Tape No. |

| Attorneys Present for Plaintiffs: | Attorneys Present for Defendants |
|---|---|
| Mark Helm, Kevin Allred, Gregory Sergi | Eric Waxman, Thomas Nolan, Carl Roth |

**Proceedings:**       PLAINTIFF'S MOTION FOR PRELIMINARY INJUNCTION
RE ENJOINING ACQUISITION PENDING ARBITRATION
(Docket # 6, filed August 21, 2012)

## I.     INTRODUCTION

Plaintiff initiated this action on August 21, 2012.  The complaint alleges three claims for relief: (1) breach of contract, (2) anticipatory breach of contract, and (3) tortious interference with contract.

On August 21, 2012, plaintiff filed a motion for preliminary injunction.  On October 1, 2012, defendants filed an opposition, and on October 22, plaintiff filed a reply.  Plaintiff's motion is presently before the Court.

## II.     BACKGROUND

Plaintiff EIG Global Energy Partners, LLC ("EIG") seeks to enjoin the sale by Societe Generale Holding de Participations, S.A. ("Societe Generale") of its indirect subsidiary, TCW Asset Management Company ("TAMCO"), to one of plaintiff's competitors, Carlyle Global Financial Services Partners, L.P ("Carlyle").  The background facts underlying this case are not in dispute.  Plaintiff EIG is an asset manager that specializes in raising and investing funds in the area of energy and energy infrastructure.  Defendant The TCW Group, Inc. ("TCW") manages investment products, and defendant TAMCO is a subsidiary of TCW.

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES - GENERAL**

| Case No. | CV 12-7173 CAS (MANx) | Date | November 30, 2012 |
|---|---|---|---|
| Title | EIG GLOBAL ENERGY PARTNERS, LLC V. TCW ASSET MANAGEMENT COMPANY, ET AL | | |

Prior to 2009, EIG's principals and several of its employees operated as a subgroup within TCW that focused on energy and infrastructure investments. In 2009, EIG's principals and TCW agreed to permit EIG's principals to leave TCW and establish a new business. This new business took the form of a cooperative venture under which EIG would continue managing funds already operated by the EIG principals, raise new funds, and distribute payments to TCW from the funds.

The process through which EIG and TCW accomplished this goal was governed by an "Omnibus Agreement." See Vitale Decl. Ex. B. This agreement provided that the separation between EIG and TCW would occur in three phases. As the phases progressed, different amounts of the revenue generated by the funds were allocated between TCW and EIG, and control over the funds would be gradually transferred to EIG. Specifically, those funds launched during phase 1 were operated through TCW, those launched during phase 2 were operated through a limited liability company operated by EIG and TAMCO, and those launched during phase 3 were operated by EIG.[1]

On the same day the parties entered into the Omnibus Agreement, TAMCO and EIG entered into an ancillary agreement governing the operation of the joint venture to be formed between EIG and TAMCO after the above phases were commenced. See Vitale Decl. Ex. A ("LLC Agreement"). The LLC Agreement was attached as an exhibit to the Omnibus Agreement. Pursuant to the Omnibus Agreement, this joint venture took the form of an LLC (named TCW - EIG Alternative Investments, LLC, referred to hereafter as "the LLC") jointly owned by TAMCO and EIG. The LLC proceeded to act as a general partner for Energy Fund XV, a fund focused on energy investments.

---

[1] Pursuant to the Omnibus Agreement, Phase 1 began on October 16, 2009 and ended when the parties executed their first "New Product Launch," which appears to be Energy Fund XV. Omnibus Agreement, Recital 3. The precise date this launch occurred is unclear from the parties submissions. Phase 2 began immediately when Phase 1 ended, and though the parties initially planned in the Omnibus Agreement to end Phase 2 on December 31, 2011, the parties later agreed to end Phase 2 on December 31, 2010. See Omnibus Agreement Recital 4; Stern Decl. ¶ 33. Phase 3 then commenced on January 1, 2011, and is set to end January 1, 2020. Omnibus Agreement, Recital 5.

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES - GENERAL**

| Case No. | CV 12-7173 CAS (MANx) | Date | November 30, 2012 |
|----------|------------------------|------|-------------------|
| Title | EIG GLOBAL ENERGY PARTNERS, LLC V. TCW ASSET MANAGEMENT COMPANY, ET AL | | |

In August 2012, Societe Generale announced its plans to sell its controlling interest in TCW to investment funds controlled by Carlyle ("the Carlyle transaction"). Carlyle, like EIG, manages funds that focus on private energy investments. Seeking to prevent this sale, EIG initiated arbitration on August 13, 2012 through the Los Angeles office of Judicial Arbitration & Mediations Services, pursuant to the Omnibus Agreement and LLC Agreement (see Section IV.A below). As of August 21, 2012, an arbitrator had not been selected, and EIG filed the motion for a preliminary injunction now before the Court.

## III.   LEGAL STANDARD

A preliminary injunction is an "extraordinary remedy." Winter v. Natural Res. Def. Council, Inc., 555 U.S. 7, 24 (2008). "A plaintiff seeking a preliminary injunction must establish that he is likely to succeed on the merits, that he is likely to suffer irreparable harm in the absence of preliminary relief, that the balance of equities tips in his favor, and that an injunction is in the public interest." Am. Trucking Ass'n, Inc. v. City of Los Angeles, 559 F.3d 1046, 1052 (9th Cir. 2009); see also Cal Pharms. Ass'n v. Maxwell-Jolly, 563 F.3d 847, 849 (9th Cir. 2009). Alternatively, "'serious questions going to the merits' and a hardship balance that tips sharply toward the plaintiff can support issuance of an injunction, assuming the other two elements of the Winter test are also met." Alliance for the Wild Rockies v. Cottrell, 632 F.3d 1127, 1132 (9th Cir. 2011). A "serious question" is one on which the movant "has a fair chance of success on the merits." Sierra On-Line, Inc. v. Phoenix Software, Inc., 739 F.2d 1415, 1421 (9th Cir. 1984). Under either formulation, demonstrating a likelihood of success on the merits and irreparable harm is "most critical." Nken v. Holder, 556 U.S. 418, 434 (2009).

## IV.   ANALYSIS

### A.   Injunctions Preserving the Status Quo Pending Arbitration are Permissible

District courts have the authority to grant a preliminary injunction to preserve the status quo pending arbitration. Toyo Tire Holdings of Amercias Inc. v. Continental Tire North America, Inc., 609 F.3d 975, 980 (9th Cir. 2010). As the Ninth Circuit has

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES - GENERAL**

| Case No. | CV 12-7173 CAS (MANx) | Date | November 30, 2012 |
|----------|------------------------|------|-------------------|
| Title | EIG GLOBAL ENERGY PARTNERS, LLC V. TCW ASSET MANAGEMENT COMPANY, ET AL | | |

recognized, such injunctions can be necessary to insure "the meaningfulness of the arbitration process," and therefore further the congress's policy in favor of enforcing arbitration agreements.  Id.  Other circuits are in agreement.  See id. at 981 – 982 (collecting cases).  Additionally, the Ninth Circuit in Toyo Tire explained that preliminary relief in this context is particularly important because "one party to the arbitration often has an incentive to delay arbitration proceedings to its own advantage," and "[e]ven without bad faith by either party, the selection of arbitrators and the constitution of the arbitral panel necessarily takes time."  Id. at 981.

Here, the arbitration agreements specifically provides that the parties may seek a preliminary injunction under these circumstances.  Specifically, the LLC agreement and Omnibus Agreement both provide that the parties may seek "provisional injunctive relief . . . in a court of law while arbitration proceedings are pending, and any provisional injunctive relief granted by such court shall remain effective until the matter is finally determined by the Arbitrator."  LLC Agreement § 10.5; Omnibus Agreement § 9.10.  Therefore, this Court has authority to issue an injunction that remains in effect until final resolution of this matter in arbitration, provided that plaintiff establishes that there are grounds for granting injunctive relief.  Toyo Tire, 609 F.3d at 981.  The Court next turns to those grounds.

**B.     Whether Plaintiff is Likely to Succeed on the Merits**

This case is essentially a contract dispute that hinges on the construction of two agreements: the Omnibus Agreement and the LLC Agreement.  According to plaintiff, the sale of TCW is barred by § 5.1 of the LLC Agreement, which states in relevant part: "no Membership Interest of portion thereof can be Transferred without the Consent of a Supermajority of the Board of Directors."  LLC Agreement § 5.1.  Plaintiff further points out that the term "Transfer" is explicitly defined in the LLC agreement to mean "a sale, exchange, transfer, assignment, including through the transfer of control by means of the transfer of voting stock or other equity interest, of a Membership Interest."  LLC Agreement Appendix 1 § 1.2.  Plaintiff argues that the portion of this definition referring to "voting stock or other equity interest" makes clear that § 5.1 prohibits transactions in equity that would result in a change in control of TAMCO, which holds a Membership Interest in the LLC.

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES - GENERAL**

| Case No. | CV 12-7173 CAS (MANx) | Date | November 30, 2012 |
|---|---|---|---|
| Title | EIG GLOBAL ENERGY PARTNERS, LLC V. TCW ASSET MANAGEMENT COMPANY, ET AL | | |

Plaintiff contends that the accuracy of this reading of § 5.1 is confirmed by the sole exception under which a party to the LLC agreement can transfer its interest without the consent of a supermajority of the board.  Pursuant to § 5.1, a Membership Interest can be transferred without consent to a "Member's wholly-owned subsidiary so long as . . . such subsidiary remains wholly-owned by such Member."  Plaintiff infers that because the only excepted transfer is one in which a Membership Interest remains in the hands of an entity wholly controlled by a Member, a transaction that changes which entity exercises ultimate control over the entity holding the Membership Interest is barred.

Plaintiff concludes that because § 5.1 prohibits a transfer of control of TAMCO without the consent of a supermajority of the LLC's board of directors, the proposed acquisition by Carlyle violates § 5.1.  Plaintiff contends that a change of control will take place for the simple reason that prior to the transaction Societe Generale ultimately controlled TAMCO, but after the transaction Carlyle will ultimately control TAMCO. Moreover, plaintiff explains that the LLC's board has not consented to the sale, and that TAMCO could not obtain consent if it tried because EIG selects a majority of the board.

Plaintiff further argues that its interpretation reasonably construes § 5.1 in a manner consistent with the way that courts interpret prior-consent and first-refusal clauses in agreements governing closely held business ventures.  As plaintiff points out, the Delaware Court of Chancery has explained:

> Antiassignment clauses are normally included in contracts to prevent the introduction of a stranger into the contracting parties' relationship and to assure performance by the original contracting parties. . . . In some business relationships the continued personal involvement of an original contracting party is a material premise of the contract itself. In such cases any assignment is problematic. In other cases the parties fear that the assignee will either not perform or will perform inadequately, in which case what is problematic is not the assignment *per se* but the identity of the assignee.

Star Cellular Telephone Co., Inc. v. Baton Rouge CGSA, Inc., 19 Del. J. Corp. L. 875, 890 (Del. Ch. 1993).  Though the Delaware Court of Chancery in Star Cellular ultimately

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

## CIVIL MINUTES - GENERAL

| Case No. | CV 12-7173 CAS (MANx) | Date | November 30, 2012 |
|---|---|---|---|
| Title | EIG GLOBAL ENERGY PARTNERS, LLC V. TCW ASSET MANAGEMENT COMPANY, ET AL | | |

found that a merger challenged by the plaintiffs in that case did not effect a transfer because it did not change the identity of the company or managers who exercised ultimate control over plaintiffs' business partners, see id. at 892, in this case plaintiff argues that the proposed sale would change ultimate control over TAMCO in violation of the purpose of antiassignment clauses such as § 5.1.  See also In re Asian Yard Partners, 1995 WL 1781675 at 7 – 8 (interpreting an anti-transfer provision in partnership agreement to "encompass[] a situation where there is a transfer of a controlling interest in a partner entity, because such a transaction effectively transfers a partner interest to the control of the party acquiring the controlling interest of the partner entity."); Oregon RSA No. 6, Inc. v. Castle Rock Cellular of Oregon Ltd. Partnership, 840 F.Supp. 770, 774 – 775 (D. Oregon 1993) (finding that an agreement that prevented an entity from transferring its interest in a partnership also prevented the sale of that entity, where the entity's only significant asset was the partnership interest).

Plaintiff recognizes that TAMCO is the only defendant that signed the LLC Agreement, but argues that the other defendants can nonetheless be enjoined from taking any steps to complete the proposed acquisition by Carlyle.[2]  Plaintiff offers two arguments in support of this conclusion.  First, plaintiff argues that TAMCO had actual and apparent authority to bind TCW because all defendants signed the Omnibus Agreement, which contained the complete text of the LLC Agreement and stated that it would be executed.  Omnibus Agreement § 3.1(a).  Plaintiff concludes that TCW therefore authorized TAMCO to impose upon it the obligations in the LLC Agreement.  See also Omnibus Agreement § 9.2 ("the TCW Parties agree not to take and agree not to permit any of their respective affiliates to take, any action intended to circumvent, diminish or impair the economic, governance or other rights of the other parties and under this Agreement.").

---

[2] Plaintiff also notes that even if these other entities were not liable for breaches of the LLC agreement, and hence were not subject to a preliminary injunction, an injunction binding TAMCO would likely be sufficient to stop the proposed sale because "consummation of the deal would presumably require various forms of action by TAMCO, including obtaining consents, providing information, and the like."  Ptf.'s Mot. at 12.

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES - GENERAL**

| Case No. | CV 12-7173 CAS (MANx) | Date | November 30, 2012 |
|---|---|---|---|
| Title | EIG GLOBAL ENERGY PARTNERS, LLC V. TCW ASSET MANAGEMENT COMPANY, ET AL | | |

Second, plaintiff argues that TCW can be enjoined from violating § 5.1 of the LLC Agreement on the theory that their actions directly caused TAMCO to breach § 5.1. Plaintiff explains that while corporate parents are not generally liable for the actions of their subsidiaries, a corporate parent is liable when it uses its ownership of a subsidiary to make the subsidiary commit an unlawful act.[3] See Esmark, Inc. v. N.L.R.B., 887 F.2d 739, 757 (7th Cir. 1989) (following Kingston Dry Dock Co. v. Lake Champlain Transp. Co., 31 F.2d 265, 267 (2d Cir. 1929) (L. Hand, J.).

In response, defendants argue that § 5.1 of the LLC Agreement cannot prevent Societe Generale from selling its stake in TCW because the Omnibus Agreement contains no provision preventing the sale, and under § 10.14 of the LLC Agreement, any inconsistency between the two agreements is resolved by looking to the Omnibus Agreement. Moreover, defendants argue that § 4.6 of the Omnibus Agreement demonstrates that the proposed sale of TCW to Carlyle can go forward without EIG's consent. Specifically, defendants point to the portion of § 4.6 that provides:

> If . . . TCW Group or any of its controlled affiliates is a party to any transaction whereby TCW Group or any of its controlled affiliates acquires, merges with, is acquired by or becomes affiliated with any party active in the energy or infrastructure business with products that compete (directly or indirectly) with EIG's products offered as of the date of this Agreement . . . then [EIG] may, as its sole and exclusive remedy, accelerate the operational and personnel transition to [EIG] that is scheduled to occur in the Phase 3 Period.

Omnibus Agreement § 4.6. Defendants contend that the Omnibus Agreement specifically contemplates the possibility that TCW will be acquired by an EIG competitor, and specifies that in those circumstances, EIG's "sole and exclusive remedy" is to "accelerate the operational and personnel transition scheduled to occur in the Phase

---

[3] Plaintiff also argues that even if TCW is not liable for a breach of the LLC Agreement, it could still practically be prevented from consummating the sale because the injunction would prevent them from conspiring with or aiding and abetting TAMCO's violation of the injunction.

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES - GENERAL**

| Case No. | CV 12-7173 CAS (MANx) | Date | November 30, 2012 |
|---|---|---|---|
| Title | EIG GLOBAL ENERGY PARTNERS, LLC V. TCW ASSET MANAGEMENT COMPANY, ET AL | | |

3 Period." Defendants conclude that because the Omnibus Agreement controls in the event of any inconsistency between it and the LLC Agreement, this provision prevents plaintiff from seeking an injunction barring the sale of TCW without approval of a supermajority of the joint venture's board.

Additionally, defendants argue that even if the LLC Agreement were controlling, that agreement does not prohibit the sale of TCW without the consent of a supermajority of the board. According to defendants, § 5.1 of the LLC Agreement only applies to transfers of a Membership Interest by a "Member" to a third party. Defendants therefore conclude that because TAMCO will be the entity holding the Membership Interest before and after the sale of TCW to Carlyle, no transfer will occur and the sale will not violate § 5.1.

Buttressing its interpretation of § 5.1, defendant points to case law that has found that a change in corporate control of a partner in a joint venture does not thereby introduce a new party to the business venture. In Northeast Communications of Wisconsin, Inc. v. CenturyTel, Inc., 516 F.3d 608 (7th Cir. 2008), the Seventh Circuit considered whether a partnership agreement giving the partners in a joint venture a right of first refusal pertaining to transfers of partnership interests became activated when the parent of one of the entities holding a partnership interest underwent a merger. Id. at 609 – 610. Plaintiff argued that the merger of defendant's parent with another corporation triggered the right of first refusal because it effectively introduced a stranger into the business venture. Id. at 611. Rejecting this argument, the Seventh Circuit reasoned the merger accomplished no such thing because "a new (indirect) owner may give Universal new marching orders, but so may a new CEO of a partner that has no corporate parent, and a change of CEO (or a new business plan adopted by an old CEO) does not give other partners a buyout right." Id.; see also Engel v. Teleprompter Corp., 703 F.2d 127, 134 – 135 (finding that no transfer of stock held by a subsidiary occurred through the sale of the subsidiary's corporate parent because direct ownership of the stock by the subsidiary was not altered in the sale of the subsidiary's parent).

Defendants further argue that plaintiff's construction of § 5.1 leads to several absurd consequences. First, defendants claim that plaintiff's position leads to the conclusion that any transfer of the stock of any entity that possesses an interest in

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES - GENERAL**

| Case No. | CV 12-7173 CAS (MANx) | Date | November 30, 2012 |
|---|---|---|---|
| Title | EIG GLOBAL ENERGY PARTNERS, LLC V. TCW ASSET MANAGEMENT COMPANY, ET AL | | |

TAMCO requires EIG consent. Defendants claim that this result is a necessary consequence of plaintiff's interpretation because § 5.1 applies to the transfer of any portion of a Membership Interest, and presumably the transfer of any portion of the equity of a company that controls TAMCO would in turn amount to a transfer of a portion of the Membership Interest held by TAMCO. Second, defendants argue that under plaintiff's construction of § 5.1, no third party could obtain a controlling interest in Societe Generale without EIG's consent. Defendants contend that it would be absurd to read the LLC agreement to contain such a broad restraint on alienation binding complete strangers to the LLC Agreement. Third, defendants argue that the bargaining history and conduct of the parties shows that it would be absurd to find that a critical term in their overall relationship is "buried" in an appendix to the LLC Agreement. Instead, defendants argue, if the parties intended to restrict Societe Generale's ability to sell its interest in TCW, it would have made more sense to include that restriction in an agreement signed by Societe Generale.

In reply, plaintiff argues that there is no inconsistency between the Omnibus Agreement and the LLC Agreement insofar as the LLC Agreement merely contains an additional restriction on transfers in control that is not present in the Omnibus Agreement. Additionally, plaintiff argues that § 4.6 of the Omnibus Agreement and § 5.1 LLC Agreement do not conflict because they address different concerns. Plaintiff explains that § 4.6 of the Omnibus Agreement addresses the consequences that follow when TCW becomes a competitor of EIG, whereas § 5.1 focuses on any change in control over TCW. Finally, plaintiff argues that exclusive remedy portion of § 4.6 of the Omnibus Agreement does not limit plaintiff's remedies in this case because it only applies if the parties have not already reached Phase 3 of their relationship. Since the parties agree that Phase 3 has already commenced, plaintiff concludes that this clause does not limit its ability to seek this injunction.

The Court finds plaintiff's construction of the agreements more convincing, and therefore finds that plaintiff is likely to succeed on the merits. The plain terms of the LLC agreement require the consent of a supermajority of the board before control over a Membership Interest is transferred "by means of the transfer of voting stock or other equity interest." LLC Agreement, Appendix 1 § 1.2. The parties agree that consent of a supermajority of the LLC's board has not been obtained, and because the Carlyle sale

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES - GENERAL**

| Case No. | CV 12-7173 CAS (MANx) | Date | November 30, 2012 |
|---|---|---|---|
| Title | EIG GLOBAL ENERGY PARTNERS, LLC V. TCW ASSET MANAGEMENT COMPANY, ET AL | | |

would transfer control over TAMCO from Societe Generale to Carlyle, the Carlyle sale is prohibited by the plain terms of the LLC Agreement.[4]

Other courts have construed anti-transfer provisions similarly even when those provisions do not explicitly define "transfer" to include changes in control affected by transfers of voting stock or other equity. In Oregon RSA No. 6, for example, the plaintiff sued to exercise a right of first refusal to purchase a partnership interest when the defendants did not purchase the partnership interest itself, but instead purchased the entities that held the partnership interest. Oregon RSA No. 6, 840 F. Supp. at 773. Since the parties' contract only explicitly applied to "tranfer[s]" of partnership interests, and not transfers of the entities holding partnership interests, the district court was faced with the question whether a partnership interest was effectively transferred through a sale of the entities which held that partnership interest. Id. at 774. The Court found that a transfer did occur under these circumstances, and that any other result would circumvent the purpose of the right-of-first refusal clause. Id. at 775.

In re Asian Yard Partners, 1995 WL 1781675 (D. Del. Br. Ct. 1995) is similarly instructive. There, the debtor took the position that its sale of the stock of an entity holding a partnership interest did not violate a provision barring any partnership interest transfer "directly or indirectly, or by operation of law," because that entity would still be the direct holder of the partnership interest before and after the stock sale. Id. at 6. The bankruptcy court disagreed, finding that "a transfer of control of a corporate general partner is prohibited as an indirect transfer of a general partner interest." Id. at 9.

The Court's interpretation of the LLC Agreement does not render it irretrievably inconsistent with the Omnibus Agreement. As plaintiff points out, there is no

---

[4] Since the Court relies on the definition of "Transfer" set out in the appendix of the LLC Agreement, which specifically contemplates that transfers can occur through transfer of voting stock or other equity, Engel and CenturyTel do not compel a different result: the agreements in those cases contained no comparable provision giving "transfer" such a broad definition. See CenturyTel, Inc., 516 F.3d at 609 – 610 (setting out the transfer restriction agreement); Engel, 703 F.2d at 128 – 129 (setting out the restriction on stock transfers).

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES - GENERAL**

| Case No. | CV 12-7173 CAS (MANx) | Date | November 30, 2012 |
|---|---|---|---|
| Title | EIG GLOBAL ENERGY PARTNERS, LLC V. TCW ASSET MANAGEMENT COMPANY, ET AL | | |

inconsistency between the agreements by virtue of the fact that the LLC Agreement
contains restrictions on transfers of control that are not contained in the Omnibus
Agreement. In fact, it is natural to expect that the two agreements would place
substantially different restrictions on the relationships between the parties because the
agreements have entirely different purposes. The Omnibus Agreement addresses the
overall relationship between the parties, including the formation and capitalization of the
LLC, whereas the LLC Agreement addresses the management and operation of the LLC.
Therefore, there is nothing inconsistent or surprising about the fact that the LLC
Agreement contains restrictions on the transfer of ultimate control over the LLC that
have no correlate in the Omnibus Agreement.[5]

Additionally, this interpretation of the LLC Agreement does not entail absurd
results. The Court rejects defendants' argument that plaintiff's interpretation compels
the result that any transfer of Societe Generale or TCW's stock requires EIG consent.
Plaintiff's position is consistent with the position that transfers of a minority of the
equity interest in the direct or indirect owners of TAMCO do not amount to a transfer of
all of the equity interest of a Membership Interest. Here, plaintiff is arguing that total
transfer of control over TAMCO results in a full transfer of the Membership Interest held
by TAMCO, and that argument does not entail that a transfer of a minority ownership
interest in Societe Generale would somehow be a transfer of a small portion of
TAMCO's Membership Interest. The Court also rejects defendants' argument that it is
absurd to find that a term in the appendix of the LLC agreement has the far-reaching
consequence of preventing the Carlyle transaction.[6]

---

[5] Additionally, the Court agrees with plaintiff that the "sole and exclusive remedy"
clause of § 4.6 of the Omnibus Agreement, accelerating the Omnibus Agreement to
phase 3, does not limit plaintiff's remedies to acceleration to phase 3 because the parties
have already entered phase 3. Nothing in § 4.6 suggests that plaintiff should be deprived
of any remedy for the events mentioned in that section in the event that the parties
already entered phase 3.

[6] In a supplemental filing, defendants argue that EIG's principles Blair Thomas
and Randall Wade acted inconsistently with EIG's position in this litigation by
transferring their equity interests in EIG to trusts without consent of TAMCO's board,

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES - GENERAL**

| Case No. | CV 12-7173 CAS (MANx) | Date | November 30, 2012 |
|---|---|---|---|
| Title | EIG GLOBAL ENERGY PARTNERS, LLC V. TCW ASSET MANAGEMENT COMPANY, ET AL | | |

Although an injunction restraining TAMCO alone would likely suffice to prevent the sale and, as a practical matter, preserve the status quo pending arbitration, plaintiff is also likely to succeed in proving that the other TCW defendants are liable for any breach of the LLC Agreement caused by TAMCO. First, the Omnibus Agreement specifically provides that "the TCW Parties agree not to take and agree not to permit any of their respective affiliates to take, any action intended to circumvent, diminish, or impair the economic, governance or other rights of the other parties and under this agreement." Omnibus Agreement § 9.2. Since the Omnibus Agreement provided that TAMCO and EIG were to enter the LLC Agreement, and the LLC Agreement was attached to the Omnibus Agreement, this provision prevents TCW from taking any action that would impair EIG's governance rights under the LLC Agreement. Second, as TAMCO's parent, TCW faces liability for any breach of the LLC Agreement by TAMCO because "a parent corporation may be held liable for the wrongdoing of a subsidiary where the parent directly participated in the subsidiary's unlawful actions." Esmark, Inc. v. N.L.R.B., 887 F.2d 739, 756 (7th Cir. 1989). If TCW takes action through TAMCO that violates the LLC Agreement, it therefore faces liability for breach of the LLC Agreement.

For these reasons, the Court finds that plaintiff has a strong likelihood of success on the merits as against both TCW and TAMCO.

---

and thereby effected an upstream transfer of a Membership Interest in violation of § 5.1. As plaintiff points out in reply, this is course of performance evidence and hence cannot be relied upon because the Court finds § 5.1 unambiguous on its face. In any event, there is no inconsistency between EIG's litigation position and the actions of Thomas and Wade. Here, EIG's litigation position is that § 5.1 prevents upstream transfers that lead to a change in control of the entities that control TAMCO, and the transfers by Thomas and Wade to the trusts did not lead to a change in control over EIG. See Second Supplemental Thomas Decl. ¶ 3 ("I have, and at all times have had, full control over the exercise of any and all voting or other governance rights with respect to the Trust's ownership interests in EIG."); Wade Decl. ¶ 2 ("I have, and at all times have had, and exercised, full control over the exercise of any and all voting or other governance rights with respect to the Trusts' ownership interests in EIG.").

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES - GENERAL**

| Case No. | CV 12-7173 CAS (MANx) | Date | November 30, 2012 |
|---|---|---|---|
| Title | EIG GLOBAL ENERGY PARTNERS, LLC V. TCW ASSET MANAGEMENT COMPANY, ET AL | | |

### C.   Plaintiff Will Suffer Irreparable Harm if the Sale is Executed

Plaintiff argues that it is facing irreparable harm as a matter of law.  As explained above, plaintiff likely has a right under § 5.1 of the LLC Agreement to prevent a transfer of TAMCO's Membership Interests without the consent of a board supermajority, and plaintiff argues that if the sale of TCW proceeds it will irretrievably lose that right. Plaintiff claims that settled authority recognizes that the loss of this type of right – the bargained for right to prevent business transactions resulting in substantial change in corporate structure or business relationships – necessarily results in irreparable harm. See CDC Group PLC v. Cogentrix Energy, Inc., 354 F. Supp. 2d 387, 394 (S.D.N.Y. 2005); Empresas Cablevision, S.A.B. de C.V. v. J.P. Morgan Chase Bank, N.A., 680 F. Supp. 2d 625, 633 (S.D. N.Y. 2010).  Alternatively, plaintiff argues that that it will suffer irreparable harm because the transaction will allow Carlyle to obtain sensitive EIG information, to exercise management control over the joint venture, will result in marketplace confusion, and will render plaintiff unable to make certain types of investments.

In response, defendants argue that the harm plaintiff claims to suffer is too speculative to warrant granting an injunction.  Moreover, defendants argue that plaintiff's concerns about its confidential information are misplaced because the Omnibus Agreement provides protection for confidential EIG information in this context.  Additionally, citing to Vantico Holdings S.A. v. Apollo Management, L.P, 247 F. Supp. 2d 437 (S.D. N.Y. 2003), defendants claim that the Court should not presume that plaintiff will suffer harm from any managerial control Carlyle might exercise over TAMCO because there is no evidence that Carlyle and its agents would ignore their fiduciary duties and economic self interest by sabotaging the joint venture.

The Court finds that plaintiff is likely to suffer irreparable harm if the acquisition goes forward in apparent violation of the LLC Agreement.  Because complex business transactions cannot be simply unwound, bargained for rights to prevent changes in business structure and ownership are irreversibly lost after a transaction breaching those rights occurs.  This principle is illustrated well in Empresas Cablevision, S.A.B. de C.V. 680 F. Supp. 2d at 633.  There, the plaintiff sued to enjoin defendants' plan to sell a 90% interest in a loan defendant made to plaintiff to a bank controlled by individuals who

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES - GENERAL**

| Case No. | CV 12-7173 CAS (MANx) | Date | November 30, 2012 |
|----------|----------------------|------|-------------------|
| Title | EIG GLOBAL ENERGY PARTNERS, LLC V. TCW ASSET MANAGEMENT COMPANY, ET AL | | |

also owned one of plaintiff's competitors.  Id. at 627.  Plaintiff argued that this sale was barred by a provision that gave plaintiff the right to veto any assignment of the loan by defendant.  Id.  The district court found that plaintiff faced irreparable harm because defendants' planned sale would "emasculate [plaintiff's] right to veto assignments of the loan, and this sort of injury is irreparable as a matter of law."  Id. at 633.  The Court further explained that "[w]hen a party has expressly negotiated for and received the right to veto certain transactions with which it disagreed before those transactions commenced, a right that is irretrievably lost upon breach, and may not be compensable by non-speculative damages, the only way to render such a provision truly viable is to enforce it."  Id. (following Wisdom Import Sales Co. v. Labatt Brewing Company, 339 F.3d 101, 114 (2d Cir. 2003) (internal quotation marks omitted).

Here, plaintiff is asserting a right to prevent a transfer in the control of TAMCO, its partner in a cooperative venture, without supermajority approval.  If this right is not given interim protection, it will be lost once the announced acquisition of TCW is consummated.  This result would interfere with the arbitration process and leave plaintiff without a meaningful remedy should it succeed on the merits.  Consequently, the Court finds that plaintiff is likely to face irreparable harm if it is not granted preliminary relief.[7]

**D.   The Balance of the Equities Tips in Plaintiff's Favor**

As explained above, plaintiff faces irreparable harm from the irretrievable loss of its right to influence who controls TAMCO's Membership Interest in the LLC.  Defendants argue that balance of equities nonetheless tips in defendants' favor because a temporary injunction would create a serious risk that the sale to Carlyle would collapse.  The collapse of the sale would in turn harm TCW through "negative consequences to the

---

[7] Since the Court's decision is that the type of injury plaintiff faces constitutes irreparable harm as a matter of law, the Court need not make findings regarding the likelihood that Carlyle would misappropriate confidential business information from defendant or make poor management decisions relating to the operation of the joint venture in an attempt to sabotage EIG's business.  Accordingly, Vantico Holdings, 247 F. Supp. 2d 437, does not compel a contrary result.

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES - GENERAL**

| Case No. | CV 12-7173 CAS (MANx) | Date | November 30, 2012 |
|---|---|---|---|
| Title | EIG GLOBAL ENERGY PARTNERS, LLC V. TCW ASSET MANAGEMENT COMPANY, ET AL | | |

stability of the institution," causing employees and clients to lose faith in TCW.  See Stern Decl. ¶¶ 52 – 53.

The Court finds that defendants have not shown that any great harm will result from the temporary injunction.  While defendants speculate that the injunction itself would cause the sale to Carlyle to collapse, there is no showing that this result is certain[8] and no showing that a comparably beneficial transaction would be impossible were it to prevail in arbitration.  Therefore, since plaintiff faces irreparable harm that cannot be undone if it prevails in arbitration, the balance of the equities tips in plaintiff's favor.

The analysis reached here is akin to the district court's reasoning in CDC Group PLC v. Cogentrix Energy, Inc., 354 F. Supp. 2d 387, 394 (S.D.N.Y. 2005).  In that case, the plaintiff, a minority shareholder in a joint venture with the defendant, sought to enjoin the defendant from selling its shares in the joint venture pursuant to an anti-transfer provision.  Id. at 388.  Balancing the equities, the district court found that a preliminary injunction preventing defendant from selling its shares would cause minimal harm, reasoning that while the injunction could deprive the defendants of one chance to sell their shares, there was no evidence that the defendants would not be able to arrange a comparable sale if it prevailed at trial.  Id. at 394.  In contrast, the district court found that the plaintiff faced greater harm because if it prevailed at trial but defendants had already sold their shares, defendants "could not readily be brought back into a forced ownership position without incalculable disruption."  Id.

**E.    The Public Interest Favors Granting an Injunction**

District courts are required to weigh the public interest implicated by an injunction. Stormans, Inc. v. Selecky, 586 F.3d 1109, 1138 (9th Cir. 2009).  However, "[w]hen the reach of an injunction is narrow, limited only to the parties, and has no impact on non-parties, the public interest will be at most a neutral factor in the analysis rather than one

---

[8] In fact, the evidence suggests that Carlyle and TCW knew that EIG planned to challenge the sale to Carlyle, and hence that any delay caused by a temporary injunction could have been anticipated and should not cause the transaction to collapse.  See Supplemental Thomas Decl. ¶¶ 5 – 6.

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES - GENERAL**

| Case No. | CV 12-7173 CAS (MANx) | Date | November 30, 2012 |
|---|---|---|---|
| Title | EIG GLOBAL ENERGY PARTNERS, LLC V. TCW ASSET MANAGEMENT COMPANY, ET AL | | |

that favors granting or denying the preliminary injunction." Id.  This case is a contract dispute that does not implicate any broad public interest beyond the signatories to the contracts and their close business associates.  Although the proposed injunction in this case affects the rights of non-parties Societe Generale and Carlyle, the impact of the injunction is limited to these private parties and does not implicate the public interest. Accordingly, since the other factors weigh in favor of a preliminary injunction, and because a preliminary injunction ensures that the parties receive a meaningful arbitration, this factor does not preclude granting an injunction.[9]

### F.    Proper Scope of the Injunction

The preceding analysis demonstrates that a preliminary injunction should be granted to preserve EIG's right to prevent transfers of control over TAMCO's Membership Interest in the LLC pending the completion of the arbitration, and the Court now considers how to structure a narrowly tailored injunction that protects EIG's contractual rights but places no unnecessary burdens on defendants' interest in closing the Carlyle transaction.  Califano v. Yamasaki, 442 U.S. 682, 702 (1979) ("injunctive relief should be no more burdensome to the defendant than necessary to provide complete relief to the plaintiffs.").  The parties have suggested different forms that such an injunction could take.  Plaintiff proposes that the Court issue an injunction preventing the TCW parties from closing the Carlyle transaction and taking certain preliminary steps necessary to close the transaction.  Plaintiff maintains that preventing the Carlyle transaction from taking place is the only way to insure that no transfer of control over the Membership Interest takes place.

Defendants propose a far narrower injunction.  They propose that the injunction take a form analogous to a "hold separate" order, which is commonly issued in antitrust

---

[9] The parties also submitted numerous evidentiary objections.  The Court does not rely on the evidence to which objections are asserted.  Instead, as is apparent from the text of the order, the Court's decision rests on its interpretation of the language of the Omnibus Agreement and LLC Agreement, and its finding that irreparable harm has been shown absent the issuance of an injunction.  Accordingly, these objections are hereby overruled as moot.

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES - GENERAL**

| Case No. | CV 12-7173 CAS (MANx) | Date | November 30, 2012 |
|----------|----------------------|------|-------------------|
| Title | EIG GLOBAL ENERGY PARTNERS, LLC V. TCW ASSET MANAGEMENT COMPANY, ET AL | | |

cases involving mergers. "A hold separate order requires a firm to refrain from intermixing the business operations of one portion of the assets it controls with those of its remaining business." Antitrust Law 3d Ed., Areeda and Hovenkamp, ¶ 990c4 (internal quotation marks omitted). A hold separate order is used to maintain the integrity of a firm being acquired through merger pending resolution of litigation challenging the merger. Id.; see also FTC v. Weyerhaeuser Co., 665 F.2d 1072, 1075 ("The aim of [a hold separate order] is to maintain an acquired unit as a viable competitor while the litigation unfolds, and to safeguard 'unscrambled' the assets acquired so that they may be divested effectively should the government ultimately prevail."). If the challenge to the merger is successful, then the firm that has been held separate is neatly subject to divestiture. Antitrust Law 3d Ed., Areeda and Hovenkamp, ¶ 990c4.

Although hold separate orders have their origin in antitrust law, courts have employed them in other contexts to protect contractual rights. In Roche Diagnostics Corp. v. Medical Automation Systems, Inc., 646 F.3d 424 (7th Cir. 2011), plaintiff had a contractual right of first refusal with respect to the acquisition of stock and assets of its business partner MAS. Upon learning of MAS' plan to sell its stock to one of plaintiff's competitors, plaintiff filed a lawsuit and sought a preliminary injunction to preserve its right of first refusal pending contractually mandated arbitration. The Seventh Circuit found that plaintiff's right of first refusal could be preserved pending arbitration if the sale of MAS was allowed to go forward subject to a hold separate order that required MAS to maintain its current employees, business operations, material assets, and not share confidential information with its acquirer. Id. at 426. The Seventh Circuit found that this hold separate order preserved plaintiff's right to relief because it insured that "the transaction can be undone and the business transferred to [plaintiff] – with its full value intact – should the arbitrator rule in [plaintiff's] favor." Id.

Here, the defendants propose that if the underlying arbitration in this case is not completed within ten days prior to the date the Carlyle transaction is set to close, then the Membership Interest held by TAMCO should be held separate and the rest of the Carlyle transaction should be allowed to go forward. Defendants explain that the Membership Interest can be held separate by transferring it to a trust that will hold the Membership Interest for the sole benefit of TAMCO. This trust will be managed by two trustees, one

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES - GENERAL**

| Case No. | CV 12-7173 CAS (MANx) | Date | November 30, 2012 |
|----------|----------------------|------|-------------------|
| Title | EIG GLOBAL ENERGY PARTNERS, LLC V. TCW ASSET MANAGEMENT COMPANY, ET AL | | |

of whom is appointed by EIG and one of whom is appointed by Societe Generale, and these trustees will be charged with exercising the voting and governance rights attached to TAMCO's membership interest. Defendants assure the Court that this arrangement would prevent the Carlyle Group from playing any role in the business or investment

decisions of the LLC. A graphic representation of the effect of defendants' proposed injunction is:



Plaintiff argues that in this case, unlike <u>Roche</u>, a hold separate order is not sufficient to protect its rights under the LLC Agreement and Omnibus Agreement. Plaintiff claims that it has the right to be in a joint venture relationship with TAMCO while that entity is

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES - GENERAL**

| Case No. | CV 12-7173 CAS (MANx) | Date | November 30, 2012 |
|----------|------------------------|------|-------------------|
| Title    | EIG GLOBAL ENERGY PARTNERS, LLC V. TCW ASSET MANAGEMENT COMPANY, ET AL | | |

controlled by TCW and, ultimately, Societe Generale, and that forcing it to accept any other arrangement is a violation of its contractual rights.  Plaintiff also argues that defendants' proposed injunction would violate the terms of the LLC Agreement, because while the agreement allows TAMCO to transfer the Membership Interest downstream to an entity it controls, the agreement does not allow it to transfer control over the Membership Interest upstream to an entity that controls TAMCO.

The Court finds that defendants' proposed hold separate injunction adequately protects plaintiff's right to obtain full relief.  Under the LLC Agreement and Omnibus Agreement, plaintiff is guaranteed that control over the Membership Interest will not pass from TAMCO, which in turn is controlled by Societe Generale.  These agreements do not, however, entitle plaintiff to any rights with respect to other assets held by TAMCO or any other TCW entity.  Hypothetically, the TCW entities and Societe Generale could spin-off all TCW assets except the Membership Interest into a new company as set forth in the below hypothetical transaction, and this transaction would be wholly consistent with plaintiff's rights as long as TAMCO was still the holder of the Membership Interest and no upstream change in control over TAMCO occurred. Plaintiff would have no interest in the assets held by the new company pursuant to the LLC Agreement and Omnibus Agreement.  Consequently, control over this new company and its assets could change and no violation of plaintiff's rights would occur. No violation of plaintiff's rights would occur in this hypothetical spin-off and sale.[10]  A graphic representation of this hypothetical transaction is:

_____

[10] At oral argument, counsel for plaintiff argued that the hypothetical transaction would violate plaintiff's rights if, in the course of spinning off TAMCO's other assets, TAMCO also changed its employees and managers.  Plaintiff's counsel further argued that defendants' proposed transfer of the Membership Interest to a trust would lead to such a change in employees and management in violation of plaintiff's rights.  The Court disagrees.  Nothing in the LLC or Omnibus Agreements gives EIG control over which individuals may act as the employees or managers of TAMCO.  While counsel for plaintiff argues that a change of management could cause such a change in the structure of TAMCO to be equivalent to a change of control, this argument ignores that as the parent corporation, Societe Generale could change TAMCO's management without there being any breach of the LLC or Omnibus Agreements.

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES - GENERAL**

| Case No. | CV 12-7173 CAS (MANx) | Date | November 30, 2012 |
|---|---|---|---|
| Title | EIG GLOBAL ENERGY PARTNERS, LLC V. TCW ASSET MANAGEMENT COMPANY, ET AL | | |



What the hypothetical transaction illustrates is that the LLC Agreement and Omnibus Agreement only give plaintiff a right to prevent transactions that have an effect on control over the Membership Interest held by TAMCO. A transaction can radically change other TCW assets and other aspects of the corporate structure of TCW entities without violating plaintiff's rights. As long as ultimate control over the Membership Interest remains unaltered, plaintiff's rights have not been violated.

It follows that defendants' proposed injunction is sufficient to secure the remedy to which plaintiff would be entitled if it succeeds in arbitration. The hypothetical

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES - GENERAL**

| Case No. | CV 12-7173 CAS (MANx) | Date | November 30, 2012 |
|---|---|---|---|
| Title | EIG GLOBAL ENERGY PARTNERS, LLC V. TCW ASSET MANAGEMENT COMPANY, ET AL | | |

transaction is equivalent to defendants' proposal for purposes of the LLC and Omnibus Agreements, and because plaintiffs' rights are not violated in the hypothetical transaction, they are not violated under defendants' proposal either. This is the case because in the corporate structure that results from defendants' proposed injunction, ultimate control over the Membership Interest remains in the hands of Societe Generale even though all other assets held by TCW entities have been transferred. By separating the Membership Interest from other Carlyle assets, this remedy preserves plaintiff's interest in preventing changes in control over the Membership Interest pending the completion of the arbitration, but by leaving all other aspects of the Carlyle transaction intact, it reaches no further.

Therefore, defendants' proposed form of injunction will ensure that plaintiff has the remedy to which it is entitled if it prevails in arbitration, and it is far more narrowly tailored to achieve this result while not interfering with defendants' ability to proceed to close the transaction as to matters that do not implicate plaintiff's rights. All that defendants' proposed injunction accomplishes is placing the Membership Interest in a trust, which effectively holds this interest separate from the rest of the transaction pending a ruling by the arbitrator. Consequently, the Court finds that defendants' form of injunction should issue.[11]

---

[11] Defendants' proposal in some ways does not function as a true hold separate order because it is not structured to allow plaintiff to unwind the Carlyle transaction. A typical hold separate order prevents intermingling and change of control in order to insure that a transaction can be unwound. In this case, however, plaintiff would have no right to unwind the transaction, but only has a right to block changes in control over the membership interest. Therefore, the hold separate order in this case does not need to preserve unwinding or divestment of ownership as a remedy, it only needs to prevent transfer of control. Preservation of divestment of ownership as a remedy may be a necessary feature of a hold separate order in the antitrust context, but it is not necessary here.

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES - GENERAL**

| Case No. | CV 12-7173 CAS (MANx) | Date | November 30, 2012 |
|---|---|---|---|
| Title | EIG GLOBAL ENERGY PARTNERS, LLC V. TCW ASSET MANAGEMENT COMPANY, ET AL | | |

## V.  CONCLUSION

In accordance with the foregoing, the Court hereby GRANTS plaintiff's request for a preliminary injunction.  Plaintiff within five days of the issuance of this order shall post a bond in the amount of $50,000.

IT IS SO ORDERED.

|  | 00 | : | 43 |
|---|---|---|---|
| Initials of Preparer | | CJ | |